UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KERRIE BAGLIO,

           Plaintiff,

    v.

ANDREW M. SAUL[1],

           Defendant.

Case No. 18-cv-04294-HSG

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 16

      Defendant Andrew M. Saul is the Commissioner of the Social Security Administration ("SSA"). The former Acting Commissioner, Nancy A. Berryhill, acting in her official capacity, denied Plaintiff Kerrie Baglio's application for Supplemental Security Income ("SSI") benefits. Dkt. No 1. Plaintiff filed this appeal challenging Defendant's final denial of disability benefits. *Id.* The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 16-5. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and remands for further proceedings.

## I. BACKGROUND

### A. Plaintiff's History

      Plaintiff was born in 1971 and has been homeless or transient since 2011. AR 116, 250, 133, 1278. In March 2010, Plaintiff went on disability leave. AR 15, 367–72. Plaintiff worked previously as a Program Coordinator at a drug and alcohol rehabilitation facility. AR 38. Plaintiff reported $7,925.00 in annual earnings during 2010. AR 17–18.

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure Rule 25(d), the Court substitutes him as Defendant.

United States District Court
Northern District of California

Plaintiff alleges that she suffers from anxiety, bipolar type II disorder, depression, mania, polysubstance dependence, and obsessive-compulsive disorder ("OCD").  AR 42, 502, 555. Plaintiff alleges her depression and manic episodes cause severe isolation, which makes her "feel like [she's] paralyzed."  AR 42, 49, 524, 575, 1270.  Plaintiff alleges her symptoms also make it difficult to show up to medical appointments.  AR 511, 560.  Plaintiff further alleges that she suffers physically from anemia, asthma, Epstein-Barr syndrome, insomnia, hypertension, post-traumatic stress disorder ("PTSD"), psoriasis, and tearfulness.  AR 47, 525, 1270.  Plaintiff has a history of methamphetamine use and suicide attempts.  AR 47, 58, 111, 414, 662.  In 2013, Plaintiff was discharged from an involuntary psychiatric admission after a suicide attempt around the time of her father's death.  AR 21, 413–22, 563.  Plaintiff alleges that she was sexually abused by a family member from ages four to thirteen.  AR 501, 513.

**B.    Legal Framework of the Social Security Act**

**1.    Legal Framework of the Social Security Act**

To qualify for SSI, the claimant must be "disabled" as defined by the Social Security Act ("Act").  The benefit program defines disability as an individual's inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505, 416.905.  The SSA deems a person disabled only if:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

United States District Court
Northern District of California

### 2. Five-Step Process for Evaluating Claimant's Disability Claim

When the claimant is dissatisfied with the initial and reconsidered decisions by the SSA, the claimant may request a hearing in front of an administrative law judge ("ALJ"). 20 C.F.R. §§ 404.929, 416.1429. The ALJ will issue a new decision based on the preponderance of the evidence developed in the hearing record and in the file. *Id.* §§ 404.929, 416.1429. To determine whether the claimant qualifies for disability benefits, the ALJ utilizes a five-step sequential evaluation process. *See id.* §§ 404.1520(a)(4), 416.920(a)(4).

#### a. Step One: Substantial Gainful Work Activity.

At Step One, the ALJ determines whether the claimant is currently engaged in work activity that is substantial and gainful. *Id*. § 404.1520(a)(4)(i), (b); *id.* § 416.920(a)(4)(i), (b). Substantial work activity "involves doing significant physical or mental activities . . . even if it is done on a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less responsibility than when [the claimant] worked before." *Id*. §§ 404.1572(a), 416.972(a). "Gainful work activity is work activity that [the claimant] do[es] for pay or profit . . . whether or not a profit is realized." *Id.* §§ 404.1572(b), 416.972(b). If the claimant is engaged in substantial gainful activity, then the claimant is not disabled, regardless of any medical condition or the claimant's age, education, or work experience. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

#### b. Step Two: Medical Severity of Impairment

If the claimant is not presently engaged in substantial gainful activity, then the ALJ determines whether the claimant's alleged impairments are medically severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). If the claimant lacks "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," then the impairments are not severe. *Id.* §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," including physical functioning, sensory capacity, following instructions, use of judgment, and responding appropriately to routine work situations (including supervision and interactions with coworkers), and dealing with changes to work routines. *Id.* §§ 404.1521(b), 416.921(b). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it

3

1    must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.*

2    §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  If the claimant does not meet these

3    requirements, then he is not disabled.  *Id.* § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c).

### c.  Step Three: Listed Impairment

If the claimant has a severe impairment, the ALJ proceeds to Step Three and determines

whether the claimant's impairment, or combination of impairments, medically "meets or equals"

an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1 ("App. 1").  *Id.* §§ 404.1520(a)(4)(iii),

(d), 416.920(a)(4)(iii), (d); *see also id.* §§ 404.1525, 416.925 (describing Appendix 1's purpose,

organization, and use).  A claimant's impairment is medically equivalent to a listed impairment if

it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.*

§§ 404.1526(a), 416.926(a).  If the claimant's impairment meets or exceeds the requirements of a

listed impairment, the claimant is disabled, regardless of age, education, and work experience.  *Id.*

§§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

The listings for mental disorders in Appendix 1 are arranged into eleven diagnostic

categories, including schizophrenia spectrum and other psychotic disorders (12.03), depressive,

bipolar, and related disorders (12.04), intellectual disorder (12.05), and trauma and stressor-related

disorders (12.15).  App. 1 § 12.00(A).  The listings typically have three sets of criteria: paragraphs

A, B, and C.  *Id.*  Paragraph A "(except 12.05) includes the medical criteria that must be present in

[the] medical evidence," paragraph B "(except 12.05) provides the functional criteria [assessed], in

conjunction with a rating scale" to evaluate how the claimant's mental disorder limits his or her

functioning, and paragraph C provides criteria used to evaluate "serious and persistent mental

disorders." *Id.*  Only some of the eleven diagnostic categories of mental disorders have paragraph

C criteria, and for those categories, the "mental disorder must satisfy the requirements of both

paragraphs A and B, or the requirements of both paragraphs A and C." *Id.*  If the claimant

satisfies the diagnostic description in the introductory paragraph and the criteria of both

paragraphs A and B (or A and C, when appropriate) are satisfied, the claimant has a listed

impairment.  *Id.*  Intellectual disorder (12.05) "has two paragraphs, designated A and B, that apply

only to intellectual disorder." *Id.*

United States District Court
Northern District of California

d.  <u>Step Four: Residual Functioning Capacity and Past Relevant Work</u>

If the claimant does not have a listed impairment, then at Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e).  The ALJ first assesses all the relevant medical and other evidence in the record to determine the claimant's RFC.  *Id.* §§ 404.1520(e), 416.920(e).  The claimant's RFC gauges the most the claimant can do despite the claimant's limitations.  *Id.* §§ 404.1545(a)(1), 416.945(a)(1).  Before making a determination, the SSA is responsible for developing the claimant's complete medical history.  *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as well as other abilities affected by the claimant's impairments.  *Id.* §§ 404.1545(b)–(d), 416.945(b)–(d).  With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work."  *Id.* §§ 404.1545(b), 416.945(b).  With respect to a claimant's mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work."  *Id.* §§ 404.1545(c), 416.945(c).

Next, the ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the ALJ determines that the claimant can still perform the past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(f), 416.920(f).  "Past relevant work" is work that the claimant has done in the past 15 years, that qualifies as substantial gainful activity, and that has "lasted long enough for [the claimant] to learn to do it."  *Id.* §§ 404.1560(b)(1), 416.960(b)(1).  The ALJ will determine whether the claimant can do her past relevant work by evaluating the claimant's testimony on work performed in the past.  *Id.* §§ 404.1560(b)(2), 416.960(b)(2).  In addition, the ALJ may

5

evaluate the testimony of other people familiar with the claimant's past work, the opinions of a vocational expert ("VE"), or other resources, such as the Department of Labor's Dictionary of Occupational Titles. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). If the claimant is found not capable of performing past relevant work at Step Four, then the burden of proof shifts to the Commissioner of the SSA to prove that the claimant is not disabled at Step Five. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

e. Step Five: Adjustment to Other Work

If the claimant cannot perform past relevant work, then at Step Five the ALJ determines whether the claimant can adjust to other work based on the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the ALJ uses the RFC assessment from Step Four to determine whether the claimant can adjust to other work. *Id.* §§ 404.1560(c)(1), 416.920(c)(1). If the ALJ determines that "other work exists in significant numbers in the national economy that [the claimant] can do," then the ALJ will find that the claimant is not disabled. *Id.* §§ 404.1560(c)(2), 416.920(c)(2). The ALJ may meet her Step Five burden in two ways: "(1) the testimony of a VE or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *See Osenbrock v. Apfel*, 240 F.3d 1157, 1161 (9th Cir. 2001).

**C.  Procedural History**

On January 24, 2014, Plaintiff applied for disability and disability insurance benefits under Title II of the Act, claiming physical and mental impairment since March 15, 2010. AR 15, 248, 332. On February 5, 2014, Plaintiff applied for SSI under Title XVI of the Act. AR 15, 332. The SSA denied both of Plaintiff's claims on April 24, 2014, and affirmed its holding on October 13, 2014 on reconsideration.[2] AR 151, 160. Plaintiff requested an administrative hearing, but failed to appear on November 15, 2016. AR 68, 170. The ALJ issued a notice to show cause for a supplemental administrative hearing. AR 73. On March 14, 2017, the ALJ held a supplemental administrative hearing after Plaintiff demonstrated good cause. AR 15, 31–65, 212–14. The ALJ

---

[2] SSA dismissed Plaintiff's prior SSI application on February 21, 2013 after she failed to appear at her hearing before the Administrative Law Judge ("ALJ"). AR 71, 88–90, 93.

United States District Court
Northern District of California

1   issued a written opinion denying both of Plaintiff's claims on May 3, 2017.  AR 24.

2       At Step One, the ALJ found Plaintiff engaged in temporary gainful activity since the onset

3   of her disability on March 15, 2010, but found that the sum of her wages did not rise to the level of

4   substantial gainful activity.  AR 17–18.

5       At Step Two, the ALJ determined that Plaintiff had the following severe impairments:

6   bipolar disorder, PTSD, and polysubstance dependence.  AR 18.  The ALJ also found Plaintiff's

7   alleged hypertension, asthma, Epstein-Barr syndrome, anemia, and chronic headaches to be non-

8   severe.  *Id.*

9       At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of

10  impairments that meets or medically equals the criteria of a listed impairment.  *Id.*; *see* App. 1.

11  The ALJ found that Plaintiff had "mild limitations" in understanding, remembering, or applying

12  information.  AR 18.  Plaintiff also supplied "most of her background and current information

13  without any significant difficulties or limitations at the hearing."  AR 18.  Plaintiff also

14  "respond[ed] well to questioning."  *Id.*  Thus, the ALJ concluded that there was "no evidence of

15  cognitive issues or difficulties."  *Id.*

16      The ALJ acknowledged that Plaintiff had "signs of scattered and circumstantial thought

17  processes" during periods of noncompliance with medication.  AR 19.  However, Plaintiff was

18  "able to understand, remember, and apply information well."  AR 18.  Moreover, the ALJ noted

19  that Plaintiff could "drive herself to the hearing" and "use the public transportation system."  AR

20  19.  The ALJ noted that, while in a clinical interview, Plaintiff was "laughing and joking," and

21  said that Plaintiff remarked that "she hides symptoms well."  *Id.*  The ALJ found that Plaintiff

22  experienced "mild limitations" in adapting and managing herself and "little difficulty with

23  grooming and hygiene."  *Id.*  Based on these findings, the ALJ concluded that Plaintiff had

24  "moderate limitations" related to concentrating, persisting, or maintaining pace and interacting

25  with others.  *Id.*

26      Prior to Step Four, the ALJ determined that Plaintiff had the RFC to perform a "full range

27  of work at all exertional levels."  *Id.*  The ALJ evaluated Plaintiff's underlying physical and

28  mental impairments to determine if the impairments could "reasonably be expected" to produce

United States District Court
Northern District of California

7

the symptoms shown.  AR 20.  The ALJ considered opinion evidence regarding "all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent."  *Id.*  The ALJ accorded "partial weight" to Dr. Mains' "medical source statements" because they were "not entirely consistent with the record, as a whole" and he "fail[ed] to identify her history of noncompliance with treatment as well as her drug and alcohol use."  AR 22.  The ALJ also gave little weight to the mental capacities form completed by Jordan Boehler, L.C.S.W. N.P., because "[a]s a social worker, Ms. Boehler [was] an unacceptable medical source for purposes of diagnosing the claimant."  *Id.*

The ALJ also evaluated the Plaintiff's statements concerning the "intensity, persistence, and limiting effects of these symptoms."  AR 20.  The ALJ reviewed Plaintiff's testimony, which illustrated her mental and physical impairments, failure to obtain medication refills, and failure to follow through with her treatment plan.  AR 21.  The ALJ noted that Plaintiff's daily physical activities were "not limited to the extent one would expect" because Plaintiff walked, rode the bus, went grocery shopping, and sought to volunteer at an animal shelter.  *Id.*  Plaintiff's polysubstance abuse was not a contributing factor in the ALJ's determination because Plaintiff's mental impairments were "severe and problematic" in the absence of substance abuse.  *Id.*  Thus, the ALJ concluded Plaintiff's self-reporting of alleged symptoms was "partially substantiated" by the record.  *Id.*

At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work as a program coordinator and drug and alcohol counselor.  AR 22–23.  The vocational expert described Plaintiff's past occupations under the Dictionary of Occupational Titles as substance abuse counselor (D.O.T. 045.107-058), a sedentary and skilled job, or program coordinator, rehabilitation services (D.O.T. 076-117-010), a light and skilled job.  AR 23.

At Step Five, when considering Plaintiff's age (39), past work, education (high school), and RFC, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy.  *Id.*  The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as hand packager, garment sorter, and marker, and indicated that 95,000, 32,000, and 31,000 jobs exist in the national economy, respectively.

1    AR 23–24.  Accordingly, the ALJ ruled that Plaintiff was not disabled and therefore did not

2    qualify for disability and disability insurance benefits or qualify for SSI.  AR 24.

3            On May 3, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's

4    decision, applying the "laws, regulations, and rulings in effect as of the date we took the action."

5    AR 1–3.  Thus, the ALJ's decision became the Commissioner's final decision on Plaintiff's

6    application for disability and disability insurance benefits or SSI.  AR 1.

7            On July 17, 2018, Plaintiff filed a complaint to appeal Defendant's final denial of disability

8    benefits and SSI.  Dkt. No. 1.  Plaintiff filed a motion for summary judgment on March 14, 2019.

9    Dkt. No. 16 ("Pl. Mot.").  Defendant filed a cross-motion for summary judgment and opposition

10   on April 11, 2019. Dkt. No. 17 ("Def. Mot.").  Plaintiff filed her reply on April 25, 2019.  Dkt. No.

11   18 ("Pl.'s Reply Mot.").

12   **II.     STANDARD OF REVIEW**

13           The Court has jurisdiction to review final decisions of the Commissioner.  *See* 42 U.S.C.

14   § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the

15   record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

16   Security, with or without remanding the cause for a rehearing.").  The Court may disturb the

17   Commissioner's decision to deny benefits only if the decision is either not supported by

18   substantial evidence or is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

19   2005).  "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as

20   adequate to support a conclusion.'"  *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012)

21   (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 985, 690 (9th Cir. 2009)).  This

22   evidence must be "more than a mere scintilla, but may be less than a preponderance," *id.*, and

23   "where the evidence is susceptible to more than one rational interpretation, one of which supports

24   the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947,

25   954 (9th Cir. 2002).

26           Finally, the Court may not reverse an ALJ's decision if the error is harmless.  "[T]he

27   burden of showing that an error is harmful normally falls upon the party attacking the agency's

28   determination."  *Molina*, 674 F.3d at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))

*United States District Court*
*Northern District of California*

(alterations in original).

## III.   DISCUSSION

Plaintiff argues that the ALJ committed reversible legal error by denying Plaintiff's claim for disability benefits.  Pl. Mot. at 1.  First, Plaintiff contends that the ALJ erroneously rejected, in whole or in part, opinions of Plaintiff's treating medical sources: Dr. Mains, Ms. Boehler, Dr. Karen Yun, and Ms. Mazu Byrd, MFT.  *Id.* at 9–15.  Second, the ALJ failed to provide "specific, clear and convincing reasons" for finding Plaintiff's subjective complaints only partially substantiated.  *Id.* at 15–18.  Plaintiff next contends that the ALJ erred in determining Plaintiff's RFC without the support of substantial evidence and relied on incomplete vocational expert testimony.  *Id.* at 18–20.  Finally, Plaintiff argues, based on *Lucia v. SEC*, 138 S. Ct. 2044 (2018), that the ALJ was improperly appointed.  *Id.* at 20.  Defendant responds that the ALJ properly evaluated the opinion evidence regarding Plaintiff's physical impairments; the ALJ gave the identified opinions less weight due to their inconsistency with evidence in the record; the ALJ properly evaluated Plaintiff's subjective testimony; the ALJ's RFC and vocational experts' testimony are both supported by substantial evidence; and Plaintiff's Appointments Clause claim fails because it was not timely made.  *See* Def. Mot. 3–15.

Because the Court finds that the ALJ did not provide sufficient reasons for placing partial weight on Dr. Mains' medical opinion and did not clearly assess Dr. Yun's or Ms. Byrd's opinions, and that these errors infected the ALJ's sequential analysis, the Court remands for further administrative proceedings.  The Court also finds that the ALJ provided specific, clear and convincing reasons for finding Plaintiff's testimony regarding her symptoms only partially substantiated and rejects Plaintiff's Appointments Clause claim as untimely.

### A.   Whether the ALJ Erroneously Evaluated Treating and Examining Sources

An ALJ distinguishes between "three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).  The ALJ "may disregard the treating physician's opinion whether or not that opinion is contradicted."  *Magallanes v.*

1   *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  A reviewing court must consider the "entire record as

2   a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"

3   *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.,* 466 F.3d

4   880, 882 (9th Cir. 2006)).  "[W]here the treating doctor's opinion is not contradicted by another

5   doctor, it may be rejected only for 'clear and convincing' reasons."  *Lester*, 81 F.3d at 830

6   (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "[I]f the treating doctor's

7   opinion is contradicted by another doctor, the Commissioner may not reject this opinion without

8   providing 'specific and legitimate reasons' supported by substantial evidence in the record for so

9   doing."  *Id.* (quoting *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983)).

10       Plaintiff argues that the ALJ improperly rejected the opinion of treating providers "in

11   whole or in part" by placing partial weight on psychiatrist Dr. Mains' opinion and "little weight"

12   on Mr. Boehler's mental capacities form, and by "implicitly reject[ing]" the opinions of Ms. Byrd

13   and Dr. Yun entirely.  Pl. Mot. at 9–15.  The Court agrees with Plaintiff that the ALJ erred in his

14   determinations as to Dr. Mains, Dr. Yun, and Ms. Byrd.

15           **i.   Dr. Mains' Opinions**

16       The ALJ placed "partial weight" on psychiatrist Dr. Mains' "medical source statements,"

17   finding that they were "not entirely consistent with the record as a whole," failed to identify

18   Plaintiff's history of non-compliance and substance use, and included statements that were

19   administrative findings "not entitled to significant weight."  AR 22.  In late 2013, Dr. Mains began

20   treating Plaintiff as her primary physician at Telecare CHANGES ("Telecare"), and continued to

21   do so for roughly three years.  AR 1121, 1123, 1150.  Dr. Mains diagnosed Plaintiff with bipolar

22   disorder, PTSD, and amphetamine dependence.  AR 1007.  Because the ALJ found Dr. Mains'

23   opinions inconsistent with the record, he was required to supply specific and legitimate reasons for

24   placing partial weight on the opinions, and could not "cherry-pick" from "mixed results" to

25   support a denial of benefits.  *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014).

26       The Court agrees with Plaintiff that the reasons proffered for placing partial weight on Dr.

27   Mains' opinions did not meet the specific and legitimate reasons standard.  In assessing Dr.

28   Mains' opinions, the ALJ pointed specifically to the "medical source statements," referring to the

United States District Court
Northern District of California

1   "Mental Health Clinician's Confidential Report" and "Mental Impairment Questionnaire."  *See*

2   AR 22 (referencing Exhibits B25F (AR 1094–97) and B30F (AR 1274–78)).  In these statements,

3   Dr. Mains provided opinions regarding diagnosis, treatment, and disability, encompassing the

4   statements highlighted by the ALJ.  *Compare* AR 22 *with* AR 1095–96 (noting Plaintiff is

5   "markedly limited" in "sustained concentration and persistence" and that her bipolar disorder and

6   social phobia "prevent[ed] [her] from working.").

7         First, while the ALJ reasoned that Dr. Mains' findings were not entirely consistent with the

8   record, he did not explain how or why.  It is unclear, for example, whether the ALJ found Dr.

9   Mains' opinions that Plaintiff had "marked limitations in attention and that her bipolar disorder

10  prevented her from working," AR 22, were inconsistent with something in the record, and if so,

11  what it was.  This brief reference to some inconsistency did not "set[] out a detailed and thorough

12  summary of the facts and conflicting clinical evidence," as required to satisfy the specific or

13  legitimate reasons standard.  *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d

14  1403, 1408 (9th Cir. 1986)).

15        The ALJ also afforded only partial weight to Dr. Mains' opinions because some of his

16  statements were administrative findings reserved to the Commissioner.  AR 22.  In the statements,

17  Dr. Mains found that Plaintiff had work restrictions related to her mental health conditions, such

18  that she was "fully disabled."  *Id.*  The ALJ's conclusion did not provide specific and legitimate

19  reasons for placing partial weight on Dr. Mains' opinions.  SSA regulations provide for medical

20  opinions that address a claimant's impairment or ability to work:

21              Medical Opinion. A medical opinion is a statement from a medical
                source about what [the claimant] can still do despite [his/her]
22              impairment(s) and whether [the claimant] have one or more
                impairment-related limitations or restrictions in the following abilities
23              . . . [the claimant's] ability to perform mental demands of work
                activities, such as understanding; remembering; maintaining
24              concentration, persistence, or pace; carrying out instructions; or
                responding appropriately to supervision, co-workers, or work
25              pressures in a work setting. 20 C.F.R. § 404.1513(a)(2)(iii).

26  While the Court agrees that a treating physician's conclusion that a claimant is disabled is not

27  dispositive, that such an opinion "will not [be] give[n] any special significance," and that the

28  ultimate decision of whether the claimant is disabled is an issue left to the Commissioner, *see* 20

United States District Court
Northern District of California

United States District Court
Northern District of California

1    C.F.R. § 404.1527(d)(1)–(3), simply stating that the opinions made administrative findings does

2    not provide a legitimate reason for placing less weight on the three years of treatment history

3    underlying Dr. Mains' opinions.  In context, Dr. Mains' opinions addressed his summary view of

4    the impact of Plaintiff's observed mental health conditions on her ability to work, as opposed to

5    being simply an unsupported legal conclusion.  *See* AR 1096 (on page three of form, after

6    previous pages detailed Dr. Mains' observations and diagnosis of bipolar disorder, answering

7    "yes" to question "Does this individual's mental health condition prevent them from working?").

8    The ALJ's blanket rejection on this basis did not provide the reasoning necessary to justify

9    discounting Dr. Mains' opinions.

10          Finally, the ALJ found that Dr. Mains "fail[ed] to identify [Plaintiff's] history of

11    noncompliance with treatment as well as her drug and alcohol use."  AR 22.  This does not appear

12    to be consistent with the record.  *See* AR 1096 ("Mental Health Clinician's Report" with boxes

13    checked for "drug abuse" and "recovering drug abuser"); AR 1277 ("Mental Impairment

14    Questionnaire" with "yes" checked in response to the question "Is your patient currently abusing

15    alcohol or drugs?").  The Questionnaire also reflects that Dr. Mains was aware of Plaintiff's non-

16    compliance with treatment based on her symptoms and limitations.  *See* AR 1278 (noting that

17    patient has difficulty with "attending appointments," "regularly taking medications," and

18    "consistently engaging with treatment, in part because "[e]xtreme social avoidance keeps her at

19    [her] house," making follow-up difficult").  These observations are consistent with Dr. Mains'

20    treatment notes in the record, which reflect that over the course of her treatment, Plaintiff

21    "followed through with a few appointments," and had "not followed through with picking up her

22    medications."  AR 1157; *see also* AR 996 ("Symtpoms (sic) complicated by med non-

23    compliance"); AR 1054 (noting that Plaintiff's "engagement is sketchy and everytime she comes

24    in and she insists she is committed and it will be better, and everytime engagement remains

25    sketchy."); 1057 ("Getting medications to her has always been a challenge for us, it seems she has

26    barely gotten any prescriptions while she has been with us, yet she sates she takes meds

27    regularly.").  Dr. Mains also noted that it was difficult to assess whether Plaintiff was "hypomanic

28    to early manic . . . vs. recent amphetamine abuse."  AR 1000.

13

1    Notwithstanding these observations, Dr. Mains said that his opinions would not "materially

2    change if [Plaintiff] were not abusing drugs or alcohol." AR 1277.[3]  So the record does not

3    support the conclusion that Dr. Mains "failed to identify" the drug use and compliance issues, and

4    thus does not provide a basis for discounting his opinions for this reason.  A treating physician's

5    "statements must be read in context of the overall diagnostic picture he draws." *Holohan v.*

6    *Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).  Absent some explanation as to why Dr. Mains

7    needed to say more about Plaintiff's substance abuse and noncompliance with treatment than he

8    did in his opinions, the ALJ did not articulate a sufficient basis for partially discounting those

9    opinions. *See Trevizo v. Berryhill*, 871 F.3d 664, 676–77 (9th Cir. 2017) (finding legal error in

10   discounting a treating physician's opinion where the ALJ failed to provide a "thorough summary

11   of the facts and conflicting clinical evidence," and the assessment was instead "wholly consistent

12   with [the provider's] treatment notes"); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.

13   1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record,

14   it may not serve as the basis for the rejection of an examining physician's conclusions.").

15   In summary, the ALJ did not provide specific and legitimate reasons supported by

16   substantial evidence for placing partial weight on Dr. Mains' opinions.

17   **ii.    Dr. Yun's and Ms. Byrd's Opinions**

18   Plaintiff also argues that the ALJ "improperly and implicitly rejected" the opinions of Dr.

19   Yun and Ms. Byrd by essentially ignoring them in declining to adopt what he referred to as "crisis

20   evaluations." Pl. Mot. at 14–15.  In 2011, Plaintiff was treated at Alameda County Behavioral

21   Health Care Services (also called "North County Crisis Services") by Dr. Yun and Ms. Byrd.  AR

22   499, 521.  Dr. Yun and Ms. Byrd treated Plaintiff over the course of multiple visits between July

23   and November 2011, and again in November and December 2013.  AR 499-576.  During

24   Plaintiff's treatment in 2011, Dr. Yun noted Plaintiff's history of substance abuse, depression,

25   bipolar disorder, and suicide attempts.  AR 524.  In August 2011, Dr. Yun rated Plaintiff's global

26

27

28   [3] The ALJ's finding that "the claimant's polysubstance use is not a contributing factor material to
     the determination of disability," AR 21, appears consistent with this conclusion.

United States District Court
Northern District of California

assessment function ("GAF") at 46, later updating it in November 2011 to 50.[4]  AR 521, 526.

Over the course of her treatment, Dr. Yun observed that Plaintiff presented with "[p]sychomotor

retardation," "[d]epressed" mood, "[i]mpaired" concentration, and "[i]mpaired-[m]oderate" to

"[i]mpaired-[s]evere" judgment," while also noting that Plaintiff's memory, abstract thinking,

orientation, thought process, and speech presented in normal range.  AR 525–26.  Dr. Yun

prescribed several medications to Plaintiff and noted that Plaintiff self-reported "[t]aking meds as

[prescribed] [has] benefits."  AR 531.  Dr. Yun's records show several missed appointments,

leading to intermittent prescription use.  AR 532, 546, 549, 556.  Plaintiff was discharged from

North County Crisis Services in November 2011 due to her failure to attend appointments and was

presumed to be out of medications.  AR 521–22.

Dr. Yun again treated Plaintiff in 2013 during a follow-up appointment after Plaintiff

attempted suicide, and updated Plaintiff's GAF score to 43.  AR 560–63.  Dr. Yun noted that

Plaintiff had not taken her medication in the two years since her initial intake in 2011 and noted

her history with substance abuse.  *Id.*  Ms. Byrd also treated Plaintiff during the same periods.  Ms.

Byrd's notes reflect several in person appointments, where she documented Plaintiff's then-

present symptoms and evaluations.  AR 499–520.  These evaluations noted the following

observations of Plaintiff: "[i]nsight/judgment limited," "[m]ood anxious," "wide range of affect,"

and "[t]angential thought process," among others. AR 505, 508, 509.  Ms. Byrd also noted several

missed appointments, as well as inconsistent prescription use.  *See* AR 510, 520, 540.  Ms. Byrd's

GAF scores of Plaintiff ranged from 50 to 52.  AR 513.

The ALJ did not mention Dr. Yun's or Ms. Byrd's evaluations by name.  Generally,

"[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate

reasons for crediting one medical opinion over another, he errs."  *Garrison*, 759 F.3d at 1012.  The

ALJ did, however, evaluate what he referred to as "crisis evaluations," and rejected them on the

---

[4] GAF scores are a tool used by mental health professionals to quantify in a single measure a
patient's overall level of functioning at a given moment.  *See* Am. Psychiatric Ass'n, Diagnostic &
Statistical Manual of Mental Disorders, at 30-32 (4th ed. Text Revision (200)).  A GAF of 50
indicates either "serious symptoms . . . OR any serious impairment in social, occupational, or
school functioning."  *Id.* at 33.

United States District Court
Northern District of California

ground that they were initial assessments based on "subjective complaints."  AR 22.  In this discussion, the ALJ cited to "Exhibit 5F/4," *id.*, which does not exist in the record.  *See* AR 25–30.  The Court assumes this was a typo, and that the ALJ was referring to Exhibit B5F at page 4, which contains a form titled, "CRISIS PROGRAM Alameda County Mental Health CRISIS Evaluation" that was prepared when Plaintiff began treatment at North County Crisis Services.  *See* Exhibit B5F (AR 501–03).  The ALJ correctly noted that this form reflects an initial evaluation of Plaintiff when she began treatment in August 2011.  *Id.*  While this evaluation was prepared by Ms. Byrd, it does not contain any opinion by Dr. Yun or reflect any of the further evaluations in Plaintiff's file for the subsequent four months of treatment at North County Crisis Services.  The ALJ "declined to adopt the limitations set forth in the crisis evaluations" because "the assessment of 'substantial' impairments is vague and contradicted by the overall record, including the claimant's testimony."  AR 22.

The problem for the Court in reviewing the ALJ's analysis is that it is not clear whether the ALJ categorized the entirety of Dr. Yun's and Ms. Byrd's treatment of Plaintiff as "crisis evaluations."  While Plaintiff's treatment in 2013 might be characterized as a "crisis evaluation" because it included only one visit, her 2011 treatment would not obviously fall into that category given that the records note continued appointments over four months.  *See Patton v. Colvin*, No. 13-cv-00518-LHK, 2014 WL 12558849, at *8 n.7 (N.D. Cal. July 22, 2014) (finding that where a doctor only saw plaintiff one time, she was not a treating physician, and thus noting that "the ALJ did not need to give specific reasons to discredit her opinions").  It appears that the ALJ's brief observation that "the assessment of 'substantial' impairments is vague and contradicted by the overall record, including the claimant's testimony," AR 22, may refer to the single August 2011 intake form.  *See* AR 501–503 (marking that Plaintiff "exhibits a substantial impairment in the following area(s): Community living arrangement[,] Daily activities, including employment, household responsibilities, and attending scheduled programs[,] and Social relationships, including the ability to establish and maintain relationship and social support systems.").  But even if that one form could be disregarded or discounted, there was no explanation of how this would justify rejecting Dr. Yun's opinion (since she did not complete the form) or disregarding Ms.

16

1   Byrd's later evaluations (as detailed throughout her treatment notes) over the course of Plaintiff's

2   four-month treatment at North County Crisis Center.

3            Based on the limited explanation provided, the Court cannot tell whether the ALJ

4   considered and rejected Dr. Yun's opinion or Ms. Byrd's subsequent evaluations (and why), or if

5   he simply overlooked them.  This leads to the conclusion that the decision did not provide the

6   required specific and legitimate reasons for disregarding these opinions (if they were in fact

7   considered and disregarded).  Even if there might be legitimate reasons for rejecting Dr. Yun's and

8   Ms. Byrd's opinions, the Court may only "review the ALJ's decision based on the reasoning and

9   factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

10  adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225

11  (9th Cir. 2009).  Without any clear discussion of Dr. Yun's and Ms. Byrd's opinions, the Court

12  cannot assess whether the ALJ considered them, as "crisis evaluations" or otherwise, and if so,

13  what the basis was for rejecting them entirely based on a citation to one form.  This lack of clarity

14  also requires remand.[5]

15           The Court finds that the cumulative errors—failure to provide specific and legitimate

16  reasons to place partial weight on Dr. Mains' opinion and failure to clearly address Dr. Yun's and

17  Ms. Byrd's opinions—were not harmless, as they infected the ALJ's determinations throughout

18  the sequential analysis.  Specifically, the ALJ's determination that Dr. Mains' opinion deserved

19  only partial weight is significant in the context of the entire record.  An ALJ can evaluate medical

20  sources by using factors including the "length of the treatment relationship and the frequency of

21  examination, the nature and extent of the treatment relationship, supportability, consistency with

22  the record, and specialization of the doctor."  *See Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir.

23  2017); 20 C.F.R. § 404.1527(c)(2)–(6).  As Plaintiff's longest treating psychiatrist reflected in the

24  record, Dr. Mains provides extensive notes regarding Plaintiff's psychiatric treatment over the

25

26  [5]  The Court notes that the ALJ also evaluated reported GAF scores (including those in Exhibit
    B5F from North County Crisis Services) and found that they do not "support a longitudinal pattern
27  of significant or serious limitations that would support any residual function capacity limitations."
    AR 22.  While the ALJ provides sufficient reasoning to place partial weight on the scores
28  themselves, this explanation does not provide an adequate explanation for apparently rejecting Dr.
    Yun's and Ms. Byrd's evaluations.

course of three years.  Thus, if Dr. Mains' opinion had been fully credited, the Court cannot say with certainty that the ALJ would still have reached the same result.   The same is true of Dr. Yun's and Ms. Byrd's opinions.  *Cf. Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").[6]

### B.   The ALJ's Credibility Analysis

"An ALJ [must] support his credibility finding about [a claimant's] testimony with specific, clear and convincing reasons."  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011).  To evaluate the claimant's testimony, the ALJ may rely on "ordinary techniques of credibility evaluation," including "inconsistencies either in the testimony or between the testimony and claimant's conduct."  *Molina*, 674 F.3d at 1112 (citing *Turner*, 613 F.3d at 1224 n.3).  "The ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting."  *Id.* at 1113.  The Court "may not engage in second-guessing" when substantial evidence in the record supports the ALJ's credibility finding.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective testimony about her symptoms, providing only boilerplate language to discount the testimony.  Pl. Mot. at 15–16.  The ALJ referenced Plaintiff's testimony in concluding she was "able to walk her dog, and she would have little difficulty volunteering at an animal shelter if offered."  AR 21.  The ALJ noted that

---

[6]  These errors in the ALJ's assessment of the severity of Plaintiff's impairment at Step Three affected the remaining analysis.  The ALJ based his judgment regarding Plaintiff's functional residual capacity on the partial, little, or no weight given to the Plaintiff's treating providers, and reevaluation of those opinions could affect the ALJ's conclusions regarding the RFC.  Similarly, reevaluation of those opinions could affect the ALJ's conclusions at Step Five.  Because the ALJ did not adequately explain his assessment of the medical opinion evidence at Step Three, the findings at Step Four and Five are erroneous, and the Court need not reach Plaintiff's additional arguments regarding those steps.  Further, because these issues warrant remand, the Court does not address Plaintiff's arguments as to the opinions of Mr. Boehler (referred to as "Ms. Boehler" in the decision).  On remand, the ALJ should consider whether the reasons proffered for placing little weight on his opinion meet the "germane reasons" standard, in light of the analysis in this Order.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff rides the bus, shops for groceries at night, walks her therapy dog, lives with a friend, and

2   checks social media.  AR 20.  The ALJ found that Plaintiff's participation in physical activities "is

3   not entirely consistent with her allegations of disability."  AR 21.  The ALJ also acknowledged

4   Plaintiff's statements that she had "difficulty getting up and getting out a few times per month."

5   AR 20.  Based on the record, the ALJ concluded Plaintiff was capable of daily living activities.

6   AR 21.

7           With respect to Plaintiff's alleged mental disability, the ALJ found that the "longitudinal

8   record does not show the presence of disabling limitation or restrictions."  AR 20.  The ALJ found

9   that Plaintiff's "treatment history shows that, when compliant with her treatment plan, she

10   improves considerably," but noted that the record "consistently documents a failure to obtain

11   refills and to follow through with her treatment plan."  AR 20–21.  The ALJ alluded to Plaintiff's

12   testimony that prescribed medications helped "[a] little bit," and that "[i]t's better with what [Dr.

13   Mains is] giving me than without."  AR 45.  Plaintiff further testified that she has trouble focusing

14   due to her bipolar disorder, which causes her to get "manic, and depressive, and suicidal."  AR 49.

15   Based on these findings, the ALJ concluded that Plaintiff's statements were only partially

16   substantiated because the overall record illustrated that she was going on and off her medications.

17   AR 21–22.  The ALJ found that the Plaintiff's "medically determinable impairments could

18   reasonably be expected to cause the alleged symptoms."  AR 20.  However, the ALJ also found

19   that the Plaintiff's statements "concerning the intensity, persistence and limiting effects of these

20   symptoms [were] not entirely consistent with the medical evidence and other evidence in the

21   record for the reasons explained in this decision."  Id.  Thus, the ALJ concluded that the Plaintiff's

22   statements about her alleged symptoms were only "partially substantiated" by the record.  AR 21.

23   The Court finds that the ALJ adequately provided specific, clear and convincing reasons for only

24   partially crediting Plaintiff's testimony.

25           Although the Court acknowledges that many courts have found compelling reasons to view

26   occasional non-compliance with treatment as rooted in an underlying mental affliction, non-

27   compliance was not the only reason for given by the ALJ for partially crediting Plaintiff's

28   testimony.  See Garrison , 759 F.3d 995 at 1018 n.24 ("we do not punish the mentally ill for

United States District Court
Northern District of California

occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions."); *Nguyen*, 100 F.3d at 1465 (finding invalid an ALJ's reasons for rejecting claimant's assertions about his depression because claimant "may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (quoting *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).  Instead, the ALJ pointed to Plaintiff's testimony regarding her daily actions, her living situation, and her ability to testify coherently, as well as her interactions with friends and providers, in finding that the evidence pointed to a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and mild limitations in adapting and managing herself.  AR 19.  "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Finding that Plaintiff did not meet this requirement based on her testimony and the overall record, the ALJ found that Plaintiff's impairments did not severely impair her functioning capacity.  By pointing to Plaintiff's additional testimony, as well as evidence from the record, the ALJ sufficiently provided clear and convincing reasons for only partially crediting Plaintiff's testimony regarding the severity of her symptoms.

### C.    Appointments Clause Challenge

Plaintiff contends that, under the Supreme Court's decision in *Lucia v. SEC*, the ALJ was not constitutionally appointed, and therefore Plaintiff's case should be remanded for a new hearing.  Pl. Mot. at 21.  In *Lucia*, the Supreme Court held that ALJs within the Securities and Exchange Commission ("SEC") are "Officers of the United States," subject to the Appointments Clause of Article II of the United States Constitution.  *Lucia v. SEC*, 138 S. Ct. 2051, 2055, (2018).  Accordingly, "only the President, a court of law, or a head of department" may appoint inferior officers under the Appointments clause.  *Id.*  The Supreme Court noted that:

> [O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief. [Petitioner] made just such a timely challenge: He contested

the validity of [the ALJ's] appointment before the Commission, and
continued pressing that claim in the Court of Appeals and this Court.

*Id.* (citation and internal quotes omitted) .

Here, Plaintiff failed to raise a timely challenge to the constitutional validity of the ALJ's appointment. Plaintiff never presented an Appointments Clause challenge at the administrative level or at any other time before filing the present motion.  *See Kabani & Co., Inc. v. U.S. Sec. & Exch. Comm'n*, 733 F. App'x 918, 919 (9th Cir. 2018) (finding that "petitioners' forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency"); *see also Allen v. Berryhill*, No. 17-CV-03414-HSG, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019) (rejecting Appointments Clause arguments when the challenge was not timely made at the administrative level); *Hugues v. Berryhill*, No. CV 17-3892-JPR, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").  Plaintiff failed to respond to this argument in her reply, and the Court rejects Plaintiff's Appointments Clause challenge as untimely.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

United States District Court
Northern District of California

## IV.    CONCLUSION

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment, and **DENIES** the Commissioner's cross-motion for summary judgment.

The action is **REMANDED** for further administrative proceedings consistent with this opinion.  "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981)).  Although the Court has found that the reasons articulated by the ALJ in assigning partial to no weight to medical opinions were insufficient, it is possible that the ALJ could address this issue on remand.  Thus, remand for award of benefits is not warranted in this case.

The clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated:  5/26/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge